Jeffrey S. Schoppert (SBN 116674)
jschoppert@keeginharrison.com
Paul C. Smith (SBN 137664)
psmith@keeginharrison.com
KEEGIN HARRISON SCHOPPERT SMITH & KARNER LLP
1000 Fourth Street, Suite 600
San Rafael, California  94901
Telephone:  (415) 456-4000
Facsimile:  (415) 456-9021

Attorneys for plaintiff and petitioner
Ri-Cheng Chian

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RI-CHENG CHIAN, an individual, as Trustee of the Chian Family Trust,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>PETER UZELAC, an individual; JIEYING IVF LABS SAN FRANCISCO, INC., a California corporation in the Process of Voluntary Winding up; and MFC LAB, INC., a California corporation,<br><br>　　　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND IMPOSITION OF CONSTRUCTIVE TRUST; PETITION FOR COURT SUPERVISION OF VOLUNTARY WINDING UP PROCEEDING**<br>**[Cal. Corp. Code, § 1904]**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　Ri-Cheng Chian, as Trustee of the Chian Family Trust, for his complaint and petition, alleges as follows:

### I. JURISDICTION

　　　　1.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a), because the matter in controversy exceeds the sum of $75,000,

exclusive of interest and costs, and is between citizens of the State of California and a citizen of Canada, a foreign state.

## II. VENUE

2.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because defendant Uzelac resides in this district and because a substantial part of the events and omissions on which this action is based took place in this district.

## III. PARTIES

3.     Plaintiff Ri-Cheng Chian ("Chian" or "plaintiff") is now and, at all relevant times has been, an individual and a citizen of the country of Canada.  Chian is trustee of the Chian Family Trust.  The principal place of administration of the Chian Family Trust is in the City of Longueuil, Province of Quebec, country of Canada.  Chian, as trustee of the Chian Family Trust, is a 50% shareholder of defendant Jieying IVF Labs San Francisco, Inc.

4.     Defendant Peter Uzelac ("Uzelac") is an individual.  Plaintiff is informed and believes and, on that basis, alleges Uzelac resides in the County of Marin, State of California.  Uzelac is a 50% shareholder of Jieying IVF Labs San Francisco, Inc. ("Jieying").  Uzelac is also a director of Jieying.

5.     Jieying is a California corporation with its principal place of business in Marin County, California.  On or about May 5, 2014, Uzelac, pursuant to California Corporations Code section 1900 et. seq. filed with the California Secretary of State a notice of dissolution of Jieying.  As alleged more fully below, the corporation is in the process of winding up its affairs following dissolution.

6.     Plaintiff is informed and believes and thereon alleges defendant MFC Lab, Inc. ("MFC") is a California corporation with its principal place of business in Marin County, California.  Plaintiff is informed and believes thereon and alleges that MFC is an entity owned in whole or in part, and controlled, by defendant Uzelac.  Plaintiff is further

2
**COMPLAINT FOR DAMAGES AND IMPOSITION OF CONSTRUCTIVE TRUST; PETITION FOR COURT SUPERVISION OF VOLUNTARY WINDING UP PROCEEDING; DEMAND FOR JURY TRIAL**

informed and believes and thereon alleges that defendant MFC was incorporated on or about May 8, 2014 for the sole purpose of succeeding to the tissue bank laboratory operations of Jieying.

## IV. **PRELIMINARY FACTUAL ALLEGATIONS**

7.  Ri-Cheng Chian is acknowledged throughout the world as an expert in reproductive biology and, in particular, in methods for human in vitro fertilization, human oocyte vitrification (freezing), and in vitro maturation ("IVM") of human immature oocytes. Chian developed technologies for vitrification and IVM that have been patented and have been, and are now, used worldwide.  Chian was awarded a Doctor of Agriculture degree (the equivalent of a Ph.D.) by the Graduate School of Natural Science and Technology at Okayama University in Japan in 1993.  Chian was a post-doctoral fellow in the Department of Zoology at the University of Laval in Quebec, Canada from 1993 to 1996 where he conducted research in oocyte maturation in vitro and in vitro fertilization. He is currently on the Faculty of Medicine in the Department of Obstetrics and Gynecology at McGill University holding the rank of Associate Professor with tenure.

8.  Chian has extensive experience in establishing, maintaining, and supervising laboratories dedicated to human reproduction and assisted reproductive technologies. From 2004 to 2010 Chian served as the scientific director of the McGill Reproductive Center in the Department of Obstetrics and Gynecology at the Royal Victoria Hospital in Montreal, Canada.  From 2001 to 2004, Chian was the scientific director of the in vitro maturation program at the McGill Reproductive Center.  From 2000 to 2001, Chian was the laboratory director for the Toronto Center for Advanced Reproductive Technology in Toronto, Canada.  From 1996 to 2000, he was a clinical embryologist at the McGill Reproductive Center.  He has also held other similar and related positions in New York and London.

9. Plaintiff is informed and believes and thereon alleges Uzelac is a medical doctor with board certification in obstetrics and gynecology and reproductive endocrinology and infertility.

10. Plaintiff is informed and believes and thereon alleges that at all times relevant to this complaint and petition, Uzelac practiced medicine with an emphasis on fertility treatment under the name and style "Marin Fertility Center."

11. When Uzelac was training as clinical fellow in 2009, Uzelac went to McGill Reproductive Center in Montreal for a short period of observation training. Uzelac and Chian met each other for the first time during the training. Beginning in or about April 2011, Uzelac, while in attendance again at a world congress of human reproduction in Montreal, began discussing with Chian the idea of a business partnership. Uzelac at that time had no laboratory facility at his fertility practice office in Marin County and was using, and paying fees to, a third party laboratory for in vitro fertilization laboratory services. Uzelac at that time discussed with Chian, Uzelac's desire to create a laboratory facility adjacent to his clinic with the assistance with Dr. Chian.

12. Thereafter, in or about July 2011, Chian and his wife, Shanjin Cui ("Cui") travelled to California to visit Uzelac's medical offices.

13. A series of negotiations followed among Uzelac, Chian and Cui concerning the ownership structure of the joint business venture then under discussion.

14. Chian proposed he retain a majority ownership interest in the laboratory business. However, Uzelac's lawyer, who also served as corporate counsel to Jieying during its formation and thereafter, persuaded Chian to agree to structure the laboratory business as a corporation with equal share ownership by Uzelac and Chian. The lawyer concurrently representing Uzelac and the corporation in formation, without disclosing to Chian the corporate governance consequences of equal share ownership, told Chian he

4
COMPLAINT FOR DAMAGES AND IMPOSITION OF CONSTRUCTIVE TRUST; PETITION FOR
COURT SUPERVISION OF VOLUNTARY WINDING UP PROCEEDING; DEMAND FOR JURY TRIAL

could achieve an economic result similar or equivalent to majority stock ownership through a profit distribution preference.

15. A corporation was thereafter formed on this basis and with the advice and direction of counsel concurrently representing the corporation and Uzelac.

16. Articles of incorporation for Jieying were filed with the California Secretary of State on August 29, 2011.

17. After Jieying was incorporated, parties attended to other corporate formalities, including the adoption of bylaws and election of directors and officers.

18. Jieying thereafter began preparing for the operation of a tissue bank laboratory. To that end, on January 23, 2012, Jieying entered into a written agreement with Uzelac, entitled Space, Equipment, and Services Use Agreement, whereby Uzelac agreed to make available for Jieying's laboratory use certain space within the premises located at 1100 South Eliseo Drive, Suite 107, Greenbrae, California, the same premises Uzelac used and continues to use for his medical practice. Plaintiff is informed and believes and thereon alleges that Uzelac was the master tenant of the space so subleased to Jieying.

19. Beginning in about April 2012, Chian supervised the acquisition and purchase of laboratory equipment and Chian began performing quality control tests for patient treatments. Concurrently with those efforts, Chian recruited and trained experienced laboratory personnel for Jieying's operations.

20. The laboratory was operated pursuant to a tissue bank license issued by the State of California Department of Public Health for the operation of a lab at 1100 South Eliseo Drive, Suite 107, Greenbrae, California and was assigned Tissue Bank License ID number CNC 80894. Chian was designated as the tissue bank director pursuant to such license. The original tissue bank license for the Jieying lab was issued on May 18, 2012.

21. The Jieying tissue bank license was renewed for the period May 18, 2013 through May 17, 2014.

22.  On or about March 12, 2014, Uzelac's legal counsel, who was, as alleged above, also from its inception, counsel for the corporation, wrote to Chian and advised Chian that Uzelac believed Uzelac was entitled to increased compensation by Jieying. That letter further stated counsel's understanding that Chian was not amenable to Uzelac's request to increase his compensation and that Uzelac was therefore proposing to dissolve the corporation and to divide the corporate assets as follows: Chian would receive 60% of the book value of cash, lab equipment and consumables and Uzelac would retain the lab equipment and consumables. In addition, Uzelac proposed that the tissue bank license be assigned by Jieying to Uzelac. In other words, Uzelac proposed to continue to operate the Jieying tissue bank laboratory and derive the profits therefrom without compensating Chian for the goodwill value the business had developed over nearly two years of profitable operations and the profits and growth in goodwill value the laboratory operations would continue to experience in the future.

23.  Chian did not agree to accept Uzelac's proposal. Uzelac thereafter, as alleged above, unilaterally elected to dissolve the corporation pursuant to the provisions of section 1900 of the California Corporations Code. Petitioner is informed and believes and thereon alleges that Uzelac, immediately upon causing the dissolution of Jieying, formed a corporation bearing the name MFC Lab, Inc. Plaintiff is informed and believes and thereafter alleges that Uzelac is the designated tissue bank director of MFC under the tissue bank license bearing ID number CNC 81022 issued to MFC in or about July 2014.

24.  With respect to the Jieying tissue bank license, once the California Department of Health learned in June 2014 of the Jieying dissolution, it cancelled the Jieying tissue bank license.

25.  Chian is informed and believes and thereon alleges that, despite the dissolution of Jieying and the lack of an assignment of the Jieying tissue bank license, Uzelac, through MFC, continued to operate the laboratory in the same location with the

same equipment, the same procedures developed by Chian personally, and with the same laboratory employee Chian had trained as a graduate student and recruited at the inception of the business.

## FIRST CLAIM FOR RELIEF
(Conversion -- against defendants Uzelac and MFC)

26. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 25, inclusive, as if set forth in full herein.

27. From and after the formation of Jieying, Jieying was the owner of the assets of the laboratory operations and business conducted by Jieying, including its rights under the sublease of space from Uzelac; the rights to the benefits of employment of laboratory personnel recruited and trained by Chian and Jieying; the scientific, technical and professional expertise employed by the laboratory; the proprietary interest in specialized laboratory technologies and procedures previously developed by Chian and Jieying; the laboratory equipment and materials; and the goodwill of the laboratory business. The precise value of Jieying's corporate assets of the date of dissolution, May 5, 2015, is presently unknown but substantially in excess of the book value of such assets as recorded in the corporation's accounting records and tax returns.

28. Beginning on or about the dates Uzelac voluntarily elected to dissolve Jieying and to incorporate MFC to succeed to the business operations of Jieying, Uzelac and MFC, acting in concert, took the assets of Jieying, and thus the value of such assets to Chian as a 50% shareholder of Jieying, and misappropriated those assets for the benefit of MFC and Uzelac, without paying fair value therefor and to the detriment of Jieying and Chian, its shareholder.

29. As a proximate result of the conversion by Uzelac and MFC of the Jieying corporate assets as alleged above, plaintiff has suffered damages in an amount subject to proof, but not less than 50% of the value of the assets so converted, including any increase

7
COMPLAINT FOR DAMAGES AND IMPOSITION OF CONSTRUCTIVE TRUST; PETITION FOR COURT SUPERVISION OF VOLUNTARY WINDING UP PROCEEDING; DEMAND FOR JURY TRIAL

in the value of the goodwill accruing since the date of conversion, all in an amount in excess of the jurisdictional limits of the court.

30. The acts of Uzelac and MFC as alleged above were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud Chian, thus justifying the award of exemplary damages in amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
(For Breach of Fiduciary Duty – against Uzelac)

31. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 25, inclusive, and 27 through 30, inclusive, as if set forth in full herein.

32. As a director of Jieying, Uzelac owed to the shareholders of Jieying the highest duties of loyalty and avoidance of conflicts of interest.

33. In electing to voluntarily dissolve Jieying, and usurping and converting Jieying's assets to his own personal benefit and the benefit of MFC, Uzelac has breached his fiduciary duties owed to Chian, to the detriment of Chian and to the direct personal benefit of Uzelac.

34. The breaches of duty alleged above entitle Chian to an award of compensatory damages in amounts subject to proof, but no less than 50% of the value of the assets converted and usurped by Uzelac and MFC, including an increase in the value of the goodwill accruing since the date of such user patient and conversion, all in an amount in excess of jurisdictional limits of the Court.

## THIRD CLAIM FOR RELIEF
(For Imposition of Constructive Trust  -- against Uzelac and MFC)

35. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 25, inclusive, and 27, 28, and 32 and 33, as if set forth in full herein.

36. By virtue of defendants' wrongful acts as alleged above, Uzelac and MFC hold, or will hold, the assets of Jieying, income derived from the operation of the

laboratory, and the increase of the goodwill value of the laboratory, as constructive trustees for the benefit of Jieying and its 50% shareholder, Chian.

## FOURTH CLAIM FOR RELIEF
(Petition for Court Supervision of Voluntary Winding Up Procedure – in re Jieying)

37. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 25, inclusive, 27 through 30, inclusive, 32 through 34, inclusive, and 36, as if set forth in full herein.

38. This petition is made and filed as required by the provisions of California Corporations Code section 1904.

39. Jieying is, and at all times mentioned in this petition was, a corporation organized and existing under the laws of California.  The corporation's principal executive office is located at 1100 S. Eliseo Drive, Suite 107, Greenbrae, Marin County, California.

40. Jieying is in the process of voluntarily winding up its affairs and dissolving. On or about May 5, 2014, a certificate stating that the corporation had elected to wind up and voluntarily dissolve was filed in the office of the California Secretary of State.  A true and correct copy of a notice of voluntary dissolution given by Uzelac and received by Chian is attached as **Exhibit A** to this petition and incorporated by reference.

41. The total number of issued and outstanding shares of stock of the corporation is 100,000.  Petitioner is the holder of record of 50,000 shares of the stock of the corporation.  Uzelac owns an equal number of shares of stock.

42. Petitioner is informed and believes and on that basis alleges that persons, whose rights have not yet been determined, have or may make claims against the corporation and that proceedings for winding up and dissolving the corporation can be effected for the best interests of the shareholders, the creditors, and any others interested in the corporation, by bringing the proceedings under court supervision.

43. As alleged above, the corporate assets of Jieying, including the substantial

goodwill value of the corporation as a going concern, have been transferred without adequate consideration to persons other than the shareholders of Jieying.  Petitioner is informed and believes and thereon alleges that such transfers without value were made at the behest and direction of Uzelac.  Any final distribution of corporate assets should take into account the financial benefits derived by Uzelac from the wrongful actions of Uzelac and MFC, the successor entity controlled by Uzelac as alleged above.

## V. <u>PRAYER FOR RELIEF</u>

Wherefore, plaintiff and petitioner prays for judgment as follows:

1. For compensatory damages according to proof at trial, in an amount not less than $75,000, plus interest thereon as allowed by law;

2. For exemplary damages in an amount according to proof at trial;

3. For imposition of a constructive trust on Jieying assets and revenue received from the operation of the laboratory now owned and operated by MFC and Uzelac, to the extent such sums are properly due and payable to Jieying and its shareholder Chian;

4. For costs of suit incurred herein, including reasonable attorneys' fees as allowed by law;

5. For issuance by the Court of an order to Jieying IVF Labs San Francisco, Inc. to show cause why the Court should not assume jurisdiction over the proceedings and set a time and date for a hearing on this petition;

6. After the hearing, the Court assume jurisdiction over and supervision of winding up and dissolution of the corporation; and

/ / /

/ / /

/ / /

/ / /

7. For such other and further relief as this Court may deem proper.

Dated: November 5, 2015

        KEEGIN HARRISON SCHOPPERT
         SMITH & KARNER LLP

    By   /s/ Jeffrey S. Schoppert
       Jeffrey S. Schoppert
       Attorneys for plaintiff and petitioner
       Ri-Cheng Chian

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: November 5, 2015

        KEEGIN HARRISON SCHOPPERT
         SMITH & KARNER LLP

    By   /s/ Jeffrey S. Schoppert
       Jeffrey S. Schoppert
       Attorneys for plaintiff and petitioner
       Ri-Cheng Chian